**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Allan Kenneth Morgal, | No. CV 07-670-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Maricopa County Board of Supervisors, | |
| Defendants. | |

Plaintiff Allan Kenneth Morgal brought this civil rights action under 42 U.S.C. § 1983 against the Maricopa County Board of Supervisors (the County) (Doc. #1).[1] Before the Court is Defendant's second summary judgment motion, entitled Motion for Summary Judgment or, in the Alternative, Motion for Judgment as a Matter of Law (Doc. #92). Also before the Court is Plaintiff's Motion to Strike Defendant's summary judgment motion (Doc. #106). After reviewing the papers associated with both motions, the Court issues the following Order.

**I.     Background**

    **A.     Complaint**

Plaintiff's claim stems from his confinement in the Maricopa County Fourth Avenue Jail and Lower Buckeye Jail (Doc. #1 at 1). Plaintiff's single-count Complaint alleged that Defendant's medical policies at the jail exhibited deliberate indifference to Plaintiff's serious

---

[1]The Court dismissed Correctional Health Services, Sheriff Joseph Arpaio, and Captain Tate as Defendants (Doc. ##26, 52).

medical needs and violated his Fourteenth and Eighth Amendment rights (id. at 4, 4H-J).

Plaintiff alleged that he began trying to see a doctor in August 2005, and was repeatedly told that he was on the "sick call list," but he was never seen by medical (id. at 4-4A).  By December, Plaintiff still had not been seen and was "coughing up green with a mixture of blood," so he instituted the inmate grievance process (id. at 4).  Plaintiff was finally seen by medical on January 24, 2006, approximately 6 weeks after he submitted his inmate grievance (id. at 4-B).  He claimed that in addition to coughing up blood, he suffered splitting headaches, ringing ears, and a virus (id. at 4).  Plaintiff alleged that Defendant's medical care policies and its delay in treating his serious medical need constituted deliberate indifference (id. at 4C).

Plaintiff also alleged that he was denied high blood pressure medication that was prescribed to him by a physician (id. at 4D).  Plaintiff explained that he suffered a stroke in early 2005—before entering jail—and since then had been taking medication for high blood pressure (id.).  He continued taking his medication in jail.  But on March 17, 2006, he submitted a grievance stating that he had put in three written orders for his medication (March 1, 10, and 14) and inquired about it verbally at least 12 times but, as of March 17, he had gone without his medication for 10 days (id.).  Plaintiff claimed that he asked for his medication at least 20 times, in writing and verbally (id. at 4E).  Plaintiff alleged that he ultimately received his medication after going 19 days without it (id.).  He claimed that he was harmed as a result of the delay in obtaining medication; he suffered from high blood pressure, dizziness, and a constant headache (id. at 4H).

**B.    Procedural**

Defendant previously moved for summary judgment (Doc. #37).  On January 14, 2009, the Court granted summary judgment to the sheriff and a sheriff's officer on the ground that neither of them were responsible for or involved with healthcare at the jail and were therefore not liable for the alleged violations related to medical department policies (Doc. #52 at 9-10).

However, summary judgment was denied as to the County (id. at 11).  After the

County obtained new counsel, the County filed its Motion for Summary Judgment or, in the Alternative, Motion for Judgment as a Matter of Law (Doc. #92).

## II.   Leave to File Motion for Summary Judgment

At the opening of its new summary judgment motion, which was filed on July 20, 2009, Defendant states that it seeks leave to file a summary judgment motion outside of the deadline set in the Scheduling Order (Doc. #92 at 1). The Scheduling Order set a May 26, 2008 deadline for dispositive motions (Doc. #12). Defendant asserts that the Scheduling Order can be modified on a showing of good cause (Doc. #92 at 1). Defendant did not file a separate motion for leave.

Defendant has failed to comply with any of the applicable Rules of Procedure. See Fed. R. Civ. P. 6(b)(1)(B) (requiring that if deadline has expired, a request for extension must be on a separate motion and the standard that must be met is excusable neglect, not good cause); LRCiv 7.3 (a party moving for an extension must disclose any previous extensions and must lodge a separate proposed form of order).

Regardless, in consideration of the resources and expenses associated with trial, the Court will address Defendant's Motion for Summary Judgment on its merits. See Fed. R. Civ. P. 1. Accordingly, the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), was issued to Plaintiff (Doc. #110), and the parties have completed briefing on the motion.

## III.   Motion for Summary Judgment

### A.   Defendant's Contentions

Defendant moves for summary judgment on the grounds that (1) Plaintiff failed to show that Defendant is liable under Monell, (2) Plaintiff failed to show he suffered a "physical injury" as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e), and (3) Plaintiff failed to submit evidence that he suffered a "serious medical condition" (Doc. #92).

Defendant argues that Plaintiff has not disclosed any evidence that would support a verdict in his favor (id. at 2). Defendant maintains that there is no evidence that Defendant

1    was aware of a deliberately indifferent practice or custom and failed to address it (id. at 4-5).

2    And Defendant contends that liability under Monell cannot stem from isolated incidents;

3    rather, it only arises where a practice is so widespread that it has the "force of law" (id.).

4              Defendant next argues that Plaintiff's claim fails because he has not demonstrated by

5    evidence or testimony from a medical professional that he suffered a physical injury from

6    either the medication incident or the lack of treatment for a respiratory infection (id. at 5-6).

7    Defendant contends that the PLRA's physical injury requirement, which provides that no

8    prisoner civil action for mental or emotional injury can be brought without a physical injury,

9    "unequivocally applies" to medical care claims under the Eighth Amendment (id. at 7).

10             Lastly, Defendant asserts that Plaintiff's claim fails as a matter of law because he has

11   not demonstrated that he suffered a "serious" medical need (id. at 8).  Defendant maintains

12   that no reasonable doctor would find the gap in Plaintiff's high blood pressure medication

13   to be a serious medical need (id. at 9).  And Defendant cites to various case law to argue that

14   neither a head cold, the flu, or a sore throat amount to a serious medical need (id. at 9-10).

15             In alternative to summary judgment, Defendant requests that the Court enter judgment

16   as a matter of law pursuant to Federal Rule of Civil Procedure 50(a)(2) (id. at 10).

17   **B.    Plaintiff's Response**

18             Plaintiff immediately responded to Defendant's motion by filing a Motion to Strike

19   (Doc. #106).[2]  Plaintiff argues that Defendant's motion does not comply with Local Rule of

20   Procedure 56.1; that the County is not a party, the Board members are parties; and that

21   because he does not seek relief for "mental or emotional injury," the physical injury

22   requirement does not apply (id. at 1).  Plaintiff also asserts that the Court has already

23   determined that Plaintiff alleged a serious medical need (id. at 2).

24   **C.    Defendant's Reply**

25             In its reply, Defendant contends that Plaintiff has never alleged personal participation

26   by individual members of the Board and that he cannot do so now in an attempt to avoid the

27

28   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
          [2]In light of the Court's decision to address Defendant's Motion for Summary
     Judgment, Plaintiff's Motion to Strike will be denied (Doc. #106).

burdens under <u>Monell</u> (Doc. #108).  Defendant reiterates its claim that Plaintiff has not submitted evidence to show that Defendant knew of a deliberately indifferent longstanding custom or practice and chose to disregard it (<u>id.</u> at 2-3).  Defendant maintains that Plaintiff has alleged that his damages include "anxiety" and "fear" which they assert constitute an allegation of mental or emotional injury (<u>id.</u> at 3).  And Defendant reargues that Plaintiff failed to proffer evidence that he suffered a serious medical need (<u>id.</u> at 3-4).  Defendant asserts that although the Court previously found that there was a issue of fact on this element, it did so only because Defendant's "previous counsel failed to present the Court with authority demonstrating that because Plaintiff suffered no actual injury . . . summary judgment was still appropriate" (<u>id.</u> at 4).[3]

### D.  Plaintiff's Supplemental Response

The Court issued a <u>Rand</u> Notice, as required, and provided Plaintiff time to file a supplemental response to Defendant's motion (Doc. #110).  In his supplemental response, Plaintiff argues that, given the numerous lawsuits and complaints filed against it, Defendant is aware of the inadequate medical care at the jail (Doc. #111).  Plaintiff asserts that despite this knowledge, Defendant refuses to take corrective action (<u>id.</u> at 1).  Plaintiff alleges that during his confinement at the jail—from August 16, 2005 to December 2, 2006—the jail's policies interfered with medical care (<u>id.</u> at 2).  And he alleges that there were numerous times in which he was not given the right medication or he went without medications and that this significantly affected his daily activities (<u>id.</u>).  Plaintiff explains that he suffered a serious infection that caused his throat to "almost close" and he was unable to eat and could barley swallow (<u>id.</u>).  He reasserts that after he informed medical that he was coughing up blood, he was sent a cold remedy form with a caution to contact medical if he was coughing up blood (<u>id.</u>; <u>see</u> Doc. #37, Ex. I).  Plaintiff claims his condition went untreated for 9-10 weeks (<u>id.</u>).

With the supplemental response, Plaintiff submitted a Statement of Disputed Facts

---

[3]In its reply, Defendant requests oral argument on the motion (Doc. #108 at 1).  This request is denied.

1   (PSDF) (Doc. #112).  In his PSDF, Plaintiff states again that he is not seeking relief for

2   mental or emotional injury; rather, he is seeking relief for delay and denial of treatment for

3   serious medical needs (id. at 1, 3).  In his combined affidavit, Plaintiff lists four specific

4   cases that he asserts put Defendant on notice of the practice at the jail to delay and deny

5   medical care (id. at 2).  Plaintiff states that the National Commission on Correctional Health

6   Care Report also demonstrates the jails' denial and delay of care (id. at 2-3).  And Plaintiff

7   repeats arguments from his initial response (id. at 4-5).

8                       **E.    Defendant's Supplemental Reply**

9            In reply, Defendant argues that Plaintiff failed to respond to the legal arguments raised

10   in the summary judgment motion (Doc. #113 at 1).  Defendant repeats its arguments for

11   judgment under <u>Monell</u> and contends that Plaintiff's only evidence is his "inadmissible self-

12   serving affidavit" (id. at 3).  As to Plaintiff's citation to the National Commission on

13   Correctional Health Care report and other cases, Defendant asserts that Plaintiff has no

14   personal knowledge of those documents or of the information possessed by Defendant, nor

15   did he attach the documents; thus, his affidavit statements are inadmissible under Rule 56(e)

16   (id.).  Defendant also argues that the cases Plaintiff identified are not admissible because they

17   are not listed in the Joint Final Pretrial Order and they were not previously disclosed (id.).

18   Defendant contends that Plaintiff has submitted no evidence that Defendant's policy or

19   custom was the "moving force" behind his purported injury (id. at 4).  And Defendant

20   reasserts that Plaintiff's claims do not meet the physical injury requirement or demonstrate

21   a serious medical need (id. at 5-6).

22   **IV.   Legal Standards**

23                       **A.    Summary Judgment Standard**

24            A court must grant summary judgment if the pleadings and supporting documents,

25   viewed in the light most favorable to the nonmovant, "show that there is no genuine issue as

26   to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

27   Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

28            Under summary judgment practice, the movant bears the initial responsibility of

presenting the basis for its motion and "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. This initial burden on the movant, however, "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence . . . ." Id. at 325. This does not always require the introduction of supporting affidavits or evidence beyond the existing record. Id. at 324. The movant may rely "solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.

If the movant meets its initial responsibility, or the movant can point to the pleadings and sufficiently argue that the nonmovant has failed to establish an element essential to his case, see Celotex at 323, then the burden shifts to the nonmovant, who must come forward with sufficient evidence demonstrating to the Court that there are genuine issues of material fact to be decided at trial. Fed. R. Civ. P. 56(e). The opposing party must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-movant. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences

1   are to be drawn in his favor." Id. at 255.

2   **B.   Pretrial Detainee Medical Care**

3        As a pretrial detainee, Plaintiff is protected by the Fourteenth Amendment's Due

4   Process Clause, which establishes that "detainees have a right against jail conditions or

5   restrictions that 'amount to punishment.'" Pierce v. County of Orange, 526 F.3d 1190, 1205

6   (9th Cir. 2008).  The Fourteenth Amendment standard is more protective than the Eighth

7   Amendment; "[t]his standard differs significantly from the standard relevant to convicted

8   prisoners, who may be subject to punishment so long as it does not violate the Eighth

9   Amendment's bar against cruel and unusual punishment." Id.; Jones v. Blanas, 393 F.3d

10  918, 931 (9th Cir. 2004).  Although a pretrial detainee's right to receive adequate medical

11  care derives from the Due Process Clause of the Fourteenth Amendment, Gibson v. County

12  of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535

13  (1979)), it is difficult to apply the "punishment" standard to medical care claims in the same

14  manner it is applied to conditions-of-confinement claims.  See Pierce, 526 F.3d at 1206-1213

15  (addressing detainees' claims regarding reading materials, telephone access, holding cells,

16  exercise, and other conditions at the county's jail facilities).  Under the Due Process Clause,

17  however, a detainee is protected against conditions or conduct—including conduct related

18  to medical treatment—that is arbitrary or purposeless.  See id. at 1205 (if a particular

19  condition or restriction is arbitrary or purposeless, a court may infer that the purpose of the

20  action is punishment that may not be inflicted on pretrial detainees) (citing Bell, 441 U.S. at

21  539).

22       At a minimum, the Due Process Clause imposes the same duty to provide adequate

23  medical care to those incarcerated as imposed by the Eighth Amendment. Gibson, 290 F.3d

24  at 1187.  Therefore, the Eighth Amendment standards governing medical care may be

25  applied.  See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Jones v. Johnson, 781

26  F.2d 769, 771 (9th Cir. 1986) ("the eighth amendment guarantees provide a minimum

27  standard of care for determining [the plaintiff's] rights as a pretrial detainee, including his

28  right to medical care").  The Ninth Circuit has emphasized, however, that although courts

borrow the Eighth Amendment standard in pretrial detainee cases, "that amendment establishes only 'a *minimum standard of care*.'" Conn v. City of Reno, 572 F.3d 1047, 1054 (9th Cir. 2009) (citing Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003) (emphasis in original).

To establish a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The plaintiff must also demonstrate that he suffered a serious medical need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). And the plaintiff must show that the defendant's response to that serious medical need was deliberately indifferent. Id.

## V.   Analysis

In its motion, Defendant relies on the option in Celotex that allows for the movant's initial burden of production to be discharged by directing the court's attention to the absence of evidence supporting the nonmovant's case (Doc. #92 at 2). See Celotex, 477 U.S. at 325; United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1543 (9th Cir. 1989) (explaining that to a summary judgment movant may "point to shortfalls in the [plaintiff's] case to demonstrate the absence of evidence . . .").

### A.   Monell Claim

Defendant argues that there is no evidence that the County, through CHS or otherwise, knew of a deficient custom or practice at the jail that amounted to deliberate indifference. Municipal liability may result from a local government custom only if a plaintiff shows "the existence of a widespread practice that . . . is so permanent and well-settled as to constitute a custom or usage with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (internal quotations omitted); Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989) (local custom as a basis for liability requires a showing of "widespread abuses or practices that . . . are so pervasive as to have the force of law").

A party opposing a motion for summary judgment cannot merely rest on the allegations contained in his pleadings, but instead must come forward with specific facts

1    showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).

2          The only evidence presented to the Court regarding this issue is as follows:

3          (1) Plaintiff's sworn statements that (a) he began trying to see a physician in August
     2005, but was not seen by medical until late January 2006, (b) he was repeatedly told he was
4    on "sick call lists" but he was never seen, and (c) he complained of serious symptoms
     including coughing up blood and still was not seen (Doc. #1 at 4-4B; Doc. #48 at 3-6, Pl.
5    Aff.).

6          (2) Plaintiff's sworn statements that he went 19 days without his high-blood pressure
     medication despite at least 20 requests—in writing and verbally—for his medication (Doc.
7    #1 at 4E; see Doc. #48 at 3-6, Pl. Aff.).

8          (3) Plaintiff's sworn statements that CHS had direct contact with him yet continued
     to refuse treatment (Doc. #1 at 4J-4K).
9

10         (4) the copy of a CHS "Health Care Refusal Slip" dated September 15, 2005, which
     states that Plaintiff refused some medication; on the face of the refusal slip Plaintiff wrote
11   that the reason for refusal was "Wrong Meds–Doctor will not see me[,] sent 2 requests in
     already" (Doc. #37, Ex. E).

12         (5) copies of CHS's responses to Plaintiff's grievances that complained about
     inadequate medical care, the inability to see medical personnel despite his attempts for
13   months and his placement on "sick call" lists, and the failure to timely refill his high blood
     pressure medication (id., Exs. G-H).
14

15         These five pieces of evidence offered to establish a custom or policy are insufficient

16   to create an issue of fact that such a policy exists.  Plaintiff does not submit any evidence to

17   demonstrate that a policy of denying medical care is pervasive or that the County regularly

18   failed to provide adequate medical care to its detainees.  Instead, Plaintiff's bare allegations

19   relate solely to his isolated treatment.  "Proof of random acts or isolated events are

20   insufficient to establish custom."  Thompson, 885 F.3d at 1444.  Therefore, Plaintiff failed

21   to establish that a triable fact exists as to whether the County maintains a municipal policy

22   of providing inadequate medical care to its detainees or that its officers engage in a

23   widespread policy of deliberate indifference to the medical needs of those they supervise.

24         Plaintiff responds by arguing that he is suing Maricopa County Supervisors

25   individually, rather than in their official capacity and that he therefore need not meet the

26   burdens established by Monell.  However, Plaintiff has never alleged that any individual

27   action by a member of the Board of Supervisors contributed to his purported injuries.

28   Without allegations that the individual members personally inflicted injury, the standards

                                          - 10 -

1    established in <u>Monell</u> and its progeny apply.  <u>See</u> <u>Weisbuch v. County of Los Angeles</u>, 119

2    F.3d 778, 781 (9th Cir. 1997) (explaining that "[m]embers of a governing board cannot be

3    vicariously liable under section 1983 for conduct by employees.").

4          In sum, Plaintiff has presented no evidence that medical personnel were acting

5    pursuant to policy, practice, or custom, even assuming that Plaintiff's other allegations are

6    true.  Further, Plaintiff has presented no evidence that Defendant was aware of that policy,

7    practice, or custom.  Summary judgment is therefore granted.  As the <u>Monell</u> argument is

8    case dispositive, the Court need not reach Defendant's remaining arguments for summary

9    judgment.[4]

10         Because summary judgment is granted, a number of other pending motions are

11   rendered moot.  These motions include: (1) Morgal's Motion in Limine (Dkt.#72), (2) The

12   County's First Motion in Limine to Preclude the Testimony of the Individual Members of

13   the Board of Supervisors (Dkt.#78), (3) The County's Second Motion in Limine to Exclude

14   Grievance Exhibits (Dkt.#79), (4) The County's Third Motion in Limine to Exclude

15   Plaintiff's Undisclosed Exhibits and Witnesses (Dkt.#80), (5) Morgal's Motion to Conduct

16   In Camera Review (Dkt.#101).

17         **Accordingly,**

18         **IT IS HEREBY ORDERED** granting Defendant's Motion for Summary Judgment

19   (Doc. #92)

20         **IT IS FURTHER ORDERED** denying Plaintiff's Motion to Strike (Doc. #106).

21         **IT IS FURTHER ORDERED** denying as moot (1) Morgal's Motion in Limine

22   (Dkt.#72), (2) The County's First Motion in Limine to Preclude the Testimony of the

23

24         [4] In the alternative to summary judgment, Defendant requests that the Court consider
25   its motion as one for judgment as a matter of law under Federal Rule of Civil Procedure
     50(a)(2) (Doc. #92 at 10).  The Ninth Circuit has held that pre-trial use of Rule 50 is
26   improper and, specifically, that Rule 50(a)(2) is not an alternative mechanism for obtaining
     summary judgment.  <u>McSherry v. City of Long Beach</u>, 423 F.3d 1015, 1019-21 (2005).
27   Therefore, a Rule 50 judgment at this stage is not warranted by existing law and Defendant
     provides no argument for disregarding Ninth Circuit precedent.  Insofar as Defendant's
28   motion requests judgment as a matter of law, it is denied.

1   Individual Members of the Board of Supervisors (Dkt.#78), (3) The County's Second Motion

2   in Limine to Exclude Grievance Exhibits (Dkt.#79), (4) The County's Third Motion in

3   Limine to Exclude Plaintiff's Undisclosed Exhibits and Witnesses (Dkt.#80), (5) Morgal's

4   Motion to Conduct In Camera Review (Dkt.#101).

5        **IT IS FURTHER ORDERED** directing the Clerk of Court to close this case.

6        **JUDGMENT ENTERED ACCORDINGLY.**

7        DATED this 12th day of October, 2009.

8

9

10   _____

11                    Mary H. Murguia
                United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28