WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Allan Kenneth Morgal,      )
                           )
            Plaintiff,     )      No. CIV 07-0670-PHX-RCB
                           )
      vs.                  )             O R D E R
                           )
Maricopa County Board of   )
Supervisors,               )
                           )
            Defendant.     )
_____)

On April 3, 2012, the Honorable Edward C. Voss, United States Magistrate Judge ("the Magistrate Judge"), denied plaintiff's Motion for Leave to File a[n] Amended Complaint (Doc. 140). Ord. (Doc. 144) at 2:16-17[1]. Currently pending before the court are plaintiff *pro se* Allan K. Morgal's timely filed objections to that denial (Doc. 147).

### *Background*

Assuming familiarity with the prior proceedings, as

_____

[1] For ease of reference, all citations to page numbers of docketed items are to the page assigned by the court's case management and electronic case filing (CM/ECF) system.

relevant here, it is only necessary to recount what
transpired on appeal to the Ninth Circuit Court of Appeals
and thereafter.

The district court granted summary judgment in favor of,
among others, the defendant Maricopa County Board of
Supervisors ("the Board").  In so doing, the district court
reasoned that plaintiff, who is challenging healthcare
services at two Maricopa County jails, did not present any
"evidence of a pervasive County policy of denying adequate
medical care."  Memo. (Doc. 122-1) at 3.[2]  The district court
held that its grant of summary judgment "rendered moot[]"
four pending motions *in limine* and plaintiff's "Motion to
Conduct In Camera Review[.]"  Ord. (Doc. 116) at 11:10-16.

On his *pro se* appeal, the Ninth Circuit found that
"[w]hen the district court granted summary judgment for the
[Board]," plaintiff "had under submission five requests that
the district court order the [Board] to produce a specified
official report purporting to identify specific systemic
problems with healthcare services at the Maricopa County
Jail."  Memo. (Doc. 122-1) at 2-3.  In that regard, plaintiff
Morgal "submitted" to the Ninth Circuit "a copy of a document
dated February 24, 2006 entitled 'Revised Accreditation
Report on the Health Care Services at Maricopa County
Sheriffs [sic] Office-Detention Bureau' and naming the
National Commission on Correctional Health Care [("NCCHC")]
as the author."  Id. at 3 n. 1.  The Ninth Circuit

----

[2]      After Judge Murguia's elevation to the Ninth Circuit Court of Appeals,
the present case was reassigned to this court.   Doc. 126.

"supplement[ed] the record to include th[at] [2006 NCCHC report] only for the limited purpose of identifying it as the subject of Morgal's discovery submissions to the district court[.]"  Id. at 3 n. 1 (citation omitted).  In light of those five unresolved discovery "requests," the Ninth Circuit held that summary judgment in the Board's favor was improper.  That Court thus "vacate[d] and remand[ed] for further proceedings, including, if applicable, resolution of any discovery request by either party relating to the [February 24, 2006] NCCHC report."  Id. at 3.  The Ninth Circuit's memorandum was filed on July 8, 2011, and the judgment took effect that date.  See Docs. 122-1; and Mandate (No. 09-17313) at 1.  The mandate did not issue though until August 8, 2011.

More than a month later, on September 15, 2011, plaintiff filed three separate motions, including a motion to re-open discovery, which had been closed since March 26, 2008.  See Ord. (Doc. 12) at 2, ¶ 6.  The primary basis for that motion was plaintiff's claim that the "discovery" of the 2006 NCCHC report "led to relevant material facts requiring [the] depositions" of two former directors of Correctional Health Services ("CHS"), a Supervisors member, the head of the Office of Management and Budget, and the Deputy County Manager.  Mot. (Doc. 123) at 2.  In denying that motion, the Magistrate Judge observed that the plaintiff just as easily could have taken the depositions of those individuals earlier, "during the discovery phase[.]"  Ord. (Doc. 133) at 2:17.  Furthermore, plaintiff did not offer any reason why he

1  did not do that.  The Magistrate Judge also explained that

2  "[p]laintiff's recent receipt of the NCCHC report did nothing

3  [to] change what he needs to prove to prevail in this action

4  and thus provides no basis to re-open discovery to allow

5  these additional depositions."  Ord. (Doc. 133) at 2:14-16.

6      On December 19, 2012, approximately eleven days after

7  denial of that motion to re-open discovery, plaintiff filed a

8  motion seeking leave to file an amended complaint pursuant to

9  Fed.R.Civ.P. 15(a).  See Mot. (Doc. 134) at 1.  Plaintiff

10  filed that motion even though, pursuant to the Rule 16

11  Scheduling and Discovery Order ("Rule 16 Order"), the

12  deadline for amending the complaint was October 26, 2007.

13  See  Ord. (Doc. 12) at 2, ¶ 4.  In seeking leave to amend,

14  plaintiff claimed, as he had before, that the defendant was

15  "misle[a]d[ing] the Court as to the dating of the [NCCHC]

16  report and its contents."  Mot. (doc. 134) at 1.  Plaintiff

17  likewise argued, again, as he had previously, that the

18  defendant should not "be rewarded" for purportedly not

19  "disclosing relevant documentation[,]" such as the 2006 NCCHC

20  report, "that was requested prior to the close of discovery."

21  Id. at 2 and 1.  Plaintiff sought leave to amend his

22  complaint to include the following "facts and others[:]"

23          The [2006 NCCHC] report illustrated that the
            . . . Supervisors were well aware of problems
24      with medical treatment at the county jails.
        [The Supervisors] w[ere] well aware of staff
25      shortages that fell below federal guidelines
        and did nothing to correct the problem.
26      Defendant states that the accreditation with
        NCCHC was in good standing when in fact
27      during the timeframes [sic] of the complaint
        the County Jails were placed on probation
28      and the accreditation was later completely

1    rescinded.

2    Id. at 2.   The Magistrate Judge, agreeing with the defendant,

3    denied plaintiff's request fo file an amended complaint

4    because plaintiff did not attach as an exhibit "a copy of the

5    proposed amended pleading[]" as LRCiv 15.1 requires.   See

6    Ord. (Doc. 139) at 1:21-22.

7        Roughly two weeks after the denial of that request to

8    amend, on February 21, 2012, plaintiff again sought leave to

9    amend his complaint.   The asserted basis for amendment was

10   plaintiff's claim that "[t]he Defendants [sic] post-event

11   conduct includes with-holding [sic] critical information that

12   the Plaintiff repeatedly requested prior to the close of

13   discovery."  Mot. (Doc. 140) at 1.   Plaintiff's motion

14   included nothing more, but this time he did attach a copy of

15   his proposed amended complaint ("the AC").

16       Depicting plaintiff's motion to amend as "nothing more

17   than an attempt . . . to make an end-run around" the prior

18   order denying his request to re-open discovery, the Board

19   strongly opposed allowing amendment.   See Resp. (Doc. 141) at

20   1:20-21.   In opposing amendment, the Board primarily argued

21   that plaintiff's motion was untimely, and allowing amendment

22   at this late date would be not only prejudicial, but also

23   futile.

24       Denying leave to amend, the Magistrate Judge looked not

25   only to plaintiff's bald reference to the Board's alleged

26   "with-holding [sic] [of] critical information," but also to

27   some of the AC's newly added allegations.   See Ord. (Doc.

28   144) at 1:21.   The Magistrate Judge observed that plaintiff

1   alleged that the Board had "hired outside consultants" who

2   made recommendations, such as changing to an electronic

3   records system[,]" which "BOS disregarded . . . and cho[]se

4   not" to do.  See Prop. Amend. Co. (Doc. 140-1) at 15.  The

5   Magistrate Judge further observed that plaintiff's AC

6   includes an allegation that in February 2006, "the jails[']

7   accreditation with the [NCCHC] was placed on probation after

8   a routine review uncovered major deficiencies."  See id. at

9   17.  The AC likewise includes an allegation that a member of

10   the Board allegedly admitted that an electronic medical

11   records system should have been installed earlier.  See id.

12      The Magistrate Judge noted that since the 2007

13   commencement of this action, plaintiff has been claiming that

14   Correctional Health Services "had a policy or custom of

15   providing inadequate health care to jail inmates[.]"  Id. at

16   2:6-8 (citation omitted).  The Magistrate Judge concluded,

17   however, that "[p]laintiff's reference to Defendant

18   withholding information and to the NCCHC in his proposed

19   amended allegations d[id] not add to [that] claim."  Id. at

20   2:8-9.  Given the Magistrate Judge's remark that "this case

21   was remanded by the Ninth Circuit to resolve any discovery

22   requests relating to the [NCCHC] report, if applicable[,]"

23   evidently, in denying leave to amend, the scope of the remand

24   also was a consideration.  See at 2:12-13.

25      Although he broadly contends that the order denying him

26   leave to amend was "both . . . clear error and . . . contrary

27   to law[,"] plaintiff objects only to the Magistrate Judge's

28   conclusion that the "'amended allegations d[id] not add to

1   his claim[.]'" Obj. (Doc. 147) at 1 (quoting Ord. (Doc. 144)

2   at 2:9).   From plaintiff's standpoint, the 2006 NCCHC report

3   "adds a great deal to the original complaint as it shows that

4   the [Board] ha[d] been aware of constitutional violations

5   within the County jails for decades and refused to fund both

6   staff positions and a record keeping system due to costs."

7   Id. at 1-2.   Plaintiff claims, although he does not

8   elaborate, that he will "suffer a great injustice and

9   prejudice" if this court affirms denial of his motion for

10  leave to amend.   See id. at 2. Plaintiff reiterates his firm

11  belief that the Supervisors' "[c]ounsel has not cooperated in

12  good faith with discovery[.]" Id. (emphasis in original).

### *Discussion*

### *I.  Preliminary Issues*

#### *A.  Plaintiff's Reply*

16      Before addressing plaintiff's objections to the denial of

17  his motion seeking leave to amend, there are two preliminary

18  issues.   The first is plaintiff's mistaken belief that he

19  "filed a *timely* reply that" the Magistrate Judge did "not

20  review[][.]"  Obj. (Doc. 147) at 1 (emphasis added).   In

21  short, as fully explained below, that reply was untimely.

22  Thus, the Magistrate Judge had no obligation to consider it.

23      On February 21, 2012, plaintiff filed his motion for

24  leave to file an amended complaint.   See Mot. (Doc. 140) at

25  1. In accordance with LRCiv 7.2(c), the Board timely filed

26  its response on March 14, 2012.   As LRCiv 7.2(d) allows,

27

28

1  plaintiff then had until March 26, 2012,[3] by which to file his

2  reply.  Plaintiff did not do that however; he filed his reply

3  on April 3, 2012.  Because the plaintiff's reply was

4  untimely, it was not clear error for the Magistrate Judge not

5  to consider that reply.  What is more, although filed on

6  April 3, 2012, plaintiff's untimely reply was not entered

7  until April 4, 2012.  See Reply (Doc. 146); and the Notice of

8  Electronic Filing associated therewith.  Hence, because the

9  Magistrate Judge's order was filed on April 3, 2012, and

10 entered at 3:37 p.m. that same date, as his order indicates,

11 the Magistrate Judge could not have known of that untimely

12 filing.  See Ord. (Doc. 144) at 1:17-18.

13      **_B.  Denial of Motion to Re-open Discovery_**

14      The second preliminary issue also pertains to timeliness.

15 Plaintiff further claims that the Magistrate Judge's earlier

16 denial of plaintiff's motion to re-open discovery, "is in

17 error contrary to law[.]" Obj. (Doc. 147) at 2.  That denial

18 order was filed and served on December 8, 2011.  See Ord.

19 (Doc. 133).  Pursuant to Fed.R.Civ.P. 72(a), plaintiff thus

20 had 14 days "after being served with a copy[]" of that order

21 in which to "serve and file objections" thereto.  In other

22 words, again computing the time in accordance with Rule 6,

23

---

24     [3]      That Rule allows a moving party to file a reply memorandum within seven
   days after service of the responsive memorandum.  Here, the Board filed and served
25 its responsive memorandum on March 14, 2012.  Computing the time in accordance with
   Fed.R.Civ.P. 6(a)(1)(A), that date, as "the event that triggers the period[,]" is
26 excluded.  Based upon the type of service, pursuant to Fed.R.Civ.P. 6(d),
   plaintiff had three additional days, beyond the seven under LRCiv 7.2(d), in which
27 to file a reply.  Because the last day of the period was on a Sunday, as
   Fed.R.Civ.P. 6(a)(1)(C) permits, plaintiff had until the next day "that is not a
28 Saturday, Sunday, or legal holiday[,]" i.e., until Monday, March 26, 2012, by which
   to file his reply.

1  plaintiff had until December 26, 2011, in which to file and
2  serve any objections to the order denying his motion to re-
3  open discovery.  Plaintiff did not file any objections within
4  that time frame, however.  Instead, he waited nearly three
5  and a half months, until April 13, 2012, when he filed his
6  objections to the order denying leave to amend.  Thus, to the
7  extent plaintiff is objecting to the Magistrate Judge's
8  December 8, 2011, order denying plaintiff's motion to re-open
9  discovery, such objection is untimely.

10 **II.  Leave to Amend**

11     **A.  Standard of Review**

12     "Generally, a motion for leave to amend the pleadings is
13 a nondispositive matter that may be ruled on by a magistrate
14 judge pursuant to 28 U.S.C. § 636(b)(1)."  Cazares v. Morris,
15 2011 WL 2414543, at *2 (D.Ariz. June 16, 2011) (citing, inter
16 alia, JJCO, Inc. v. Isuzu Motors America, Inc., 2009 WL
17 3818247, *2 (D.Haw. Nov. 12, 2009) (magistrate judge's denial
18 of a motion for leave to amend complaint is not a dispositive
19 ruling) (citing, in turn, U.S. Dominator, Inc. v. Factory
20 Ship Robert E. Resoff, 768 F.2d 1099, 1102 n. 1 (9th Cir.
21 1985), superseded by statute on other grounds as recognized
22 in Simpson v. Lear Astronics Corp., 77 F.3d 1170 (9th Cir.
23 1996) (noting that the plaintiff's motion for leave to amend
24 its Complaint was properly treated as a nondispositive motion
25 when the magistrate judge granted the plaintiff's motion)).
26 There are circumstances, such as when a "magistrate judge
27 denies a party the opportunity to assert a new claim or
28 defense[,]" or "when the denial is specifically premised on

1  futility[,]" that courts have "view[ed] a magistrate judge's
2  denial of a motion for leave to amend as a dispositive
3  ruling." JJCO, Inc., 2009 WL 3818247, at *3 (citing cases).
4  That "view is not universal[,]" as the court in JJCO, Inc.
5  astutely observed however. Id. at *3 (citing Hall v. Norfolk
6  S. Ry. Co., 469 F.3d 590, 595 (7th Cir. 2006) (finding a
7  magistrate judge's denial of a motion to amend on grounds of
8  futility to be nondispositive and subject to review for clear
9  error by the district court)).

10       Even if that view was universally held, in the present
11  case, the Magistrate Judge's denial of leave to amend did not
12  deprive the plaintiff of "the opportunity to assert a *new*
13  claim or defense[.]" See JJCO, Inc., 2009 WL 3818247, at *3
14  (citation omitted) (emphasis added). Nor did the Magistrate
15  Judge "specifically premise[]" denial of leave to amend upon
16  futility. See id. (citations omitted). Therefore, his order
17  denying plaintiff's motion seeking leave to amend is non-
18  dispositive under this line of reasoning.

19       Given that the challenged order is non-dispositive,
20  plaintiff is correct – the clearly erroneous or contrary to
21  law standard applies here. See 28 U.S.C. § 636(b)(1)(A)
22  ("[a] judge . . . may reconsider any pretrial matter under
23  this subparagraph (A) where it has been shown that the
24  magistrate judge's order is clearly erroneous or contrary to
25  law[]"); Fed.R.Civ.P. 72(a) (a district court "must consider
26  timely objections and modify or set aside any part of the
27  order that is clearly erroneous or contrary to law[]").
28  "'The clearly erroneous standard applies to the magistrate

1  judge's factual findings[.]'"   <u>Williams v. U.S.</u>, 2012 WL
2  406904, at *3 (quoting <u>Columbia Pictures, Inc. v. Bunnell</u>,
3  245 F.R.D. 443, 446 (C.D.Cal. 2007)).   On the other hand,
4  "'the contrary to law standard applies to the magistrate
5  judge's legal conclusions, which are reviewed de novo.'" <u>Id.</u>;
6  <u>see also</u> <u>Jones v. Corrections Corp. of America</u>, 2011 WL
7  1706838, at *4 (D.Ariz. May 5, 2011) (citations and internal
8  quotation marks omitted) ("[T]he contrary to law standard
9  . . . permits independent review of purely legal
10 determinations by the magistrate judge.")

11     In the present case, plaintiff is not challenging any
12 factual findings by the Magistrate Judge.   Rather, he is
13 challenging the Magistrate Judge's legal conclusion denying
14 leave to amend.   Thus, applying the contrary to law standard,
15 this court will engage in an independent, de novo review of
16 that denial.

17     ***B.  Governing Legal Standards***

18     "A decision is 'contrary to law' if it applies an
19 incorrect legal standard or fails to consider an element of
20 the applicable standard." <u>Forouhar v. Asa</u>, 2011 WL 4080862,
21 at *1 (N.D.Cal. Sept. 13, 2011) (citation and internal
22 quotation marks omitted).   Likewise, "a magistrate judge's
23 decision is 'contrary to law' when it fails to apply or
24 misapplies relevant statutes, case law or rules of
25 procedure." <u>Gabriel Technologies Corp. v. Qualcomm Inc.</u>,
26 2012 WL 849167 at *1 (S.D.Cal. March 13, 2012) (citation and
27 internal quotation marks omitted).

28     The Magistrate Judge denied leave to amend primarily

1  because "Plaintiff's reference to [the Board] withholding

2  information and to the NCCHC in his proposed amended

3  allegations d[id] not add to his claim."  Ord. (Doc. 144) at

4  2:8-9.  In denying leave to amend, however, the Magistrate

5  Judge overlooked the fact that a Rule 16 scheduling order had

6  been filed in this case.  That omission was contrary to law

7  because, as explained herein, at least in the first instance,

8  plaintiff's motion to amend should have been examined in

9  light of Fed.R.Civ.P. 16(b)(4) and the case law construing

10 it.

11      In the Ninth Circuit, where, as here, a motion for leave

12 to amend is filed after entry of a Rule 16 scheduling order,[4]

13 the movant cannot "appeal to the liberal amendment procedures

14 afforded by Rule 15[.]"  AmerisourceBergen Corp. v. Dialysist

15 West, Inc., 465 F.3d 946, 952 (9th Cir. 2006).  Instead, the

16 movant must "satisfy the *more stringent* 'good cause' showing

17 required under Rule 16."  Id. (emphasis in original); see

18 also Himmelfarb v. JP Morgan Chase Bank Nat. Ass'n, 2011 WL

19 4498975, at *3 n. 3 (D.Haw. Sept. 26, 2011) (The plaintiff

20 "had to satisfy the more rigorous 'good cause' standard

21 established by Rule 16[]" where he filed that motion outside

22 the time period set in the scheduling order.)  Rule 16(b)(4)

23

24      [4]      As in Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir.
   1992), plaintiff Morgal "did *not* specifically request that the court modify its
25 scheduling order; he merely [sought leave] to amend his complaint."  See id., at
   608 (emphasis in original).  Nonetheless, this court will follow the approach
26 endorsed by the Ninth Circuit in Johnson and  construe plaintiff Morgal's motion
   for leave to amend as a motion to modify the scheduling order under Rule 16.  See
27 id.; see also Zest IP Holdings, LLC v. Implant Direct Mfg., LLC, 2012 WL 175411,
   at *1 n.1 (S.D.Cal. Jan. 2012) (finding that Johnson permits "construing a motion
28 to amend a pleading under Rule 15 as a motion to modify a scheduling order under
   Rule 16[]").

1  expressly states that "[a] schedule may be modified only for

2  good cause and with the judge's consent."   Fed.R.Civ.P.

3  16(b)(4).   "The district court is given broad discretion in

4  supervising the pretrial phase of litigation, and its

5  decisions regarding the preclusive effect of a pretrial order

6  . . . will not be disturbed unless they evidence a clear

7  abuse of discretion."   <u>C.F. ex rel. Farnan v. Capistrano</u>

8  <u>Unified Sch. Dist.</u>, 654 F.3d 975, 984 (9th Cir. 2011), <u>cert.</u>

9  <u>denied</u> <u>sub</u> <u>nom.</u> <u>C.F. v. Corbett</u>, 132 S.Ct. 1566 (U.S. Feb.

10  21, 2012) <u>Id.</u> at 984 (citations and internal quotation marks

11  omitted) (omission in original).

12      "A court's evaluation of good cause is *not* coextensive

13  with an inquiry into the propriety of the amendment under

14  . . . Rule 15."   <u>Mammoth Recreations</u>, 975 F.2d at 609

15  (citation and internal quotation marks omitted)(emphasis

16  added).   "Unlike Rule 15(a)'s liberal amendment policy which

17  focuses on the bad faith of the party seeking to interpose an

18  amendment and the prejudice to the opposing party, Rule

19  16(b)'s "good cause" standard primarily considers the

20  diligence of the party seeking the amendment."   <u>Id.</u>   Put in a

21  slightly different way, "'[t]he focus of the inquiry is upon

22  the moving party's reasons for seeking modification.'"

23  <u>Farnan</u>, 654 F.3d at 984 (quoting <u>Johnson</u>, 975 F.2d at 609).

24      Courts within this Circuit "have articulated and

25  undertaken [a] three-step inquiry in resolving the question

26  of 'diligence' in the context of determining good cause under

27  Rule 16[.]"   <u>Grant v. United States</u>, 2011 WL 5554878, at *4

28  (E.D.Cal. Nov. 15, 2011), <u>adopted</u>, 2012 WL 218959, at *1

1  (E.D.Cal. Jan. 23, 2012).  Under that inquiry:

2      [T]o demonstrate diligence under Rule 16's
    "good cause" standard, the movant may be required
3      to show the following: (1) that []he was diligent
    in assisting the [c]ourt in creating a workable
4      Rule 16 order; (2) that h[is] noncompliance with
    a Rule 16 deadline occurred or will occur,
5      notwithstanding h[is] diligent efforts to comply,
    because of the development of matters which could
6      not have been reasonably foreseen or anticipated at
    the time of the Rule 16 scheduling conference; and
7      (3) that []he was diligent in seeking amendment
    of the Rule 16 order, once it became apparent that
8      []he could not comply with the order.

9  Id. (quoting Jackson v. Laureate, Inc., 186 F.R.D. 605, 608

10 (E.D.Cal. 1999)) (other citation omitted).  The diligence

11 obligation is ongoing.  "Parties must 'diligently attempt to

12 adhere to that schedule throughout the subsequent course of

13 the litigation.'"  Trejo v. City of Shafter, 2011 WL 6130894,

14 at *1 (E.D.Cal. Dec. 8, 2011) (quoting Jackson, 186 F.R.D. at

15 607) (other citation omitted).

16     The Ninth Circuit has also recognized that, "[t]he

17 district court may modify the pretrial schedule 'if it cannot

18 reasonably be met despite the diligence of the party seeking

19 the extension.'"  Johnson, 975 F.2d at 609 (quoting

20 Fed.R.Civ.P. 16 advisory committee's note).  By the same

21 token though, "carelessness is not compatible with a finding

22 of diligence and offers no reason for a grant of relief."

23 Id.  Finally, while "the existence or degree of prejudice to

24 the party opposing the modification might supply additional

25 reasons to deny a motion, the focus of the inquiry is upon

26 the moving party's reasons for seeking modification."  Id.

27 (citation omitted).  "If that party was not diligent, the

28 inquiry should end."  Id.  That is because, "[a]s the Ninth

1   Circuit explained in *Johnson* . . . , once the district court
2   has filed a pretrial scheduling order pursuant to Rule 16
3   . . . , a motion seeking to amend pleadings is governed first
4   by Rule 16(b), and only secondarily by Rule 15(a)."
5   <u>Laureate</u>, 186 F.R.D. at 607).  That means that if the Rule 16
6   good cause standard is not met, there is no need to "reach
7   the Rule 15(a) standard."  <u>See</u> <u>B2B CFO Partners, LLC v.</u>
8   <u>Kaufman</u>, 2011 WL 2713887, at *4 (D.Ariz. 2011) (holding that
9   it "need not reach the Rule 15(a) standard[]" where
10  plaintiffs did not satisfy the Rule 16(b) standard).

11      ***C.  Analysis***

12      On July 26, 2007, a Rule 16 Order was entered in this
13  case.  In ordering "that the parties shall comply with the
14  . . . deadlines and discovery orders[]" enumerated therein,
15  that Order contained the following explicit warning:

16      **THE PARTIES AND COUNSEL ARE CAUTIONED THAT THE**
17  **DEADLINES SET FORTH IN THIS RULE 16 SCHEDULING ORDER SHALL BE**
18  **STRICTLY ENFORCED**.

19  Ord. (Doc. 12) at 1 (emphasis in original).  That Scheduling
20  Order further mandated:

21      4. Motions to Amend the Complaint, and to join additional parties shall be
22  filed **no later than   Friday, October 26, 2007   **.

23  <u>Id.</u> at 2, ¶ 4 (emphasis in original).  Plaintiff did not file
24  the motion to amend which is the subject of this court's
25  review until February 21, 2012, however. As explained herein,
26  under these "case-specific circumstances, the 'diligence'
27  inquiry . . . turn[s][,]" primarily upon "consideration of
28  [plaintiff's] diligence "between the discovery of new

1  information and the motion to amend[.]" See Aldan v. World

2  Corp., 267 F.R.D. 346, 357 (N. Mar. I. 2010).

3       In seeking leave to modify the Rule 16 Order to allow

4  amendment, plaintiff has the burden of establishing good

5  cause within the meaning of that Rule.  Plaintiff's motion is

6  void of any case law, statutes or rules, however.[5]  As earlier

7  noted, the sum total of his motion is plaintiff's bald

8  assertion that the Board's "post-event conduct includes with-

9  holding [sic] critical information that the Plaintiff

10 repeatedly requested prior to the close of discovery."  Mot.

11 (Doc. 140) at 1.  The Board's opposition raised the specter

12 that Rule 16's good cause standard has some relevancy here.[6]

13 Given the absence of a reply, and plaintiff's failure to

14 address good cause initially, clearly, he has made no attempt

15 to establish the requisite good cause.

16      Plaintiff's silence on that issue does not necessarily

17 preclude a finding that he acted diligently with respect to

18 the first two steps of the good cause inquiry, though.  As to

19

20      [5]     The Board's response did include a legal analysis, but, for the most
   part, it missed the mark.  That is because the Board focused almost exclusively
21 upon untimeliness, prejudice and futility – factors which, in accordance with Foman
   v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), typically are
22 considered when deciding the propriety of allowing amendment under Fed.R.Civ.P.
   15(a).  Because plaintiff's motion to amend was filed after entry of the Rule 16
   Order, as explained above, as a prerequisite to amendment, plaintiff must satisfy
23 Rule 16(b)(4)'s more stringent good cause standard.  Only if plaintiff meets that
   burden, does Rule 15(a) become relevant.  Therefore, the bulk of the Board's
   response was not directly relevant.
24

25      [6]     Opposing amendment, the Board, purporting to quote from Scognamillo v.
   Credit Suisse First Boston, LLC, 587 F.Supp.2d 1149, 1155-56 (N.D.Cal. 2008),
26 stated, "'Plaintiff has not addressed the 'good cause' standard and has offered no
   justification for the delay in seeking to amend his complaint.  Absent a showing
   of good cause, Plaintiff's motion to amend his complaint is denied.'" Resp. (Doc.
27 141) at 2:22-24.  That quote appears nowhere in Scognamillo, however. So, although
   the Board recognizes that Rule 16's good cause standard is implicated here, it did
28 not provide any pertinent case law.  Likewise, the Board did not analyze diligence,
   which is central to the good cause inquiry.

- 16 -

1   the first step, there is nothing to suggest that plaintiff was

2   not "diligent in assisting the [c]ourt in creating a workable

3   Rule 16 order[.]" <u>See</u> <u>Grant</u>, 2011 WL 5554878, at *4 (internal

4   quotation marks and citation omitted).  As an aside, the court

5   observes that given the Board's seeming awareness that "good

6   cause" is the governing legal standard here, presumably, if it

7   believed that plaintiff had not been diligent in this regard,

8   the Board would have so argued, but it did not.

9         As to the second good cause factor, as the record shows,

10  plaintiff's noncompliance with the Rule 16 Order's October 26,

11  2007, deadline for filing his motion to amend "occurred . . .

12  because of the development of matters which could not have

13  been reasonably foreseen or anticipated at the time of the

14  Rule 16 scheduling conference[.]" <u>See</u> <u>id.</u> (internal quotation

15  marks and citations omitted).  In particular, when the parties

16  entered into the Rule 16 Order on July 26, 2007, plaintiff

17  could not have anticipated the motion practice which would

18  ensue, beginning in the spring of 2009, with respect to the

19  2006 NCCHC report.  Nor could he anticipate that he would not

20  receive that report until roughly two and a half years later,

21  in January, 2010, during the pendency of his appeal.  <u>See</u>

22  <u>Appellant's Reply</u> (No. 09-17313) (Doc. 17) at 3.

23        Despite the foregoing, plaintiff's good cause showing

24  falters, and ultimately fails, at the third step of the

25  inquiry.  Plaintiff has not met his burden of showing that he

26  "was diligent in seeking amendment of the Rule 16 order, once

27  it became apparent that []he could not comply with the order."

28  <u>See</u> <u>Grant</u>, 2011 WL 5554878, at *4 (citations omitted).  There

is more than sufficient proof in the record that, from
plaintiff's standpoint, the 2006 NCCHC report was important to
his theory of liability in this lawsuit, and that it had been
well before February 21, 2012, when he filed the motion to
amend which now is under review.  Since April 13, 2009,
plaintiff had been attempting to procure that report,[7] and
eventually he did.  On May 10, 2010, plaintiff supplied the
2006 NCCHC report to the Ninth Circuit on his appeal.  See
Appellant's Reply (No. 09-17313) (Doc. 17) at 2, ¶ 3.  Thus,
obviously plaintiff was in possession of the 2006 NCCHC report
when the mandate was filed on August 8, 2011.  Moreover, on
September 15, 2011, when plaintiff filed three post-appeal
motions, he specifically relied upon that report in two of
those motions.  One of plaintiff's bases for seeking
appointment of counsel was the Board's alleged denial of the
existence of the 2006 NCCHC report.  Mot. (Doc. 124) at 1.
That report also formed the basis for plaintiff's motion to
re-open discovery, also filed that same date.

    Thus, under the particular facts of this case, plaintiff
has not shown that he acted diligently when, instead of
seeking amendment at least by September 15, 2011, when he
filed three other post-appeal motions – two of which were
based in part upon the 2006 NCCHC report – he waited until

---

[7]    In an April 13, 2009, letter which the Supervisors construed as a
"Motion to Produce[,]" plaintiff requested, among other documents, an NCCHC report.
See Def.'s Resp. to Mot. to Produce (Doc. 66-1) at 1:28-2:1.  Because that letter
is not part of the record, there is no way of knowing for certain whether at that
time plaintiff was seeking the 2006 version of the NCCHC's report.  Further
muddying the waters is the fact that in its response, the Board objected to the
production of NCCHC reports for years other than 2006.  As this dispute continued,
however, it became clear that, despite what the Board presumed, all along
plaintiff had been seeking the 2006 version of the NCCHC report.

December 19, 2011, more than four months after entry of the
mandate, to file his first motion to amend; and this second
motion to amend was not filed until more than six months after
entry of the mandate.  Cf. Laureate, 186 F.R.D. at 609
(denying plaintiff's motion for leave to amend her complaint
because it was not supported by good cause in that, *inter
alia*, plaintiff was "silent as to whether any new and
previously unavailable information justified the requested
amendment[]" and she "fail[ed] to show diligence in filing her
motion to amend[]") (citation and footnote omitted).

     The present case thus stands in sharp contrast to cases
such as Navarro v. Eskanos & Adler, 2006 WL 3533039, at *2
(N.D.Cal. Dec. 7, 2006), and Rants v. WHPacific Inc., 2010 WL
4622164, at *2 (W.D.Wash. Nov. 4, 2010), where, based upon a
showing of good cause, the courts allowed amendment after the
filing of a Rule 16 order.  Plaintiff Navarro filed her motion
to amend "within two weeks of discovering [through depositions
of defendants' employees] the basis of her new allegations."
Navarro, 2006 WL 3533039, at *2.  The Navarro court reasoned
that "[p]laintiff showed diligence by seeking leave to amend
her complaint upon learning of the basis of her new claims."
Id.  The same cannot be said of plaintiff Morgal who, although
he had the basis for his purported new claims in his
possession on August 8, 2011, waited considerably longer than
two weeks before seeking leave to amend.

     Acting with similar haste as plaintiff Navarro, plaintiff
Rants likewise acted diligently by filing her motion to amend
to add two new defendants less than two weeks after the

1  deadline for the filing of any such motions.  See Rants, 2010
2  WL 4622164, at *2.  Plaintiff Morgal did not act with similar
3  promptness.  He did not seek leave to amend at the first
4  available opportunity after entry of the mandate.
5  Additionally, allowing amendment at this late date would
6  "create . . . meaningful issues of case management and . . .
7  impair the efficient adjudication of th[is] action[]" given
8  that this case has been pending for more than five years; the
9  time for discovery has long since passed; and the Board's
10  summary judgment motion on remand is pending.  See id. at *2
11  (citation omitted).  These factors bolster a finding of lack
12  of diligence in the present case.  Consequently, unlike
13  Rants, where allowing plaintiff to amend her complaint might
14  have "assist[ed] [in] the efficient adjudication of th[at]
15  action because" the addition of two defendants "prevent[ed]
16  the potential for multiple lawsuits[,]" adding allegations
17  based upon the 2006 NCCHC report at this late date would have
18  the opposite effect here.  See id.

19      Lastly, the court notes that the sole basis for
20  plaintiff's motion seeking leave to file an amended complaint
21  was, as mentioned earlier, his bald assertion that "[t]he
22  Defendants [sic] post-event conduct includes with-holding
23  [sic] critical information that the plaintiff repeatedly
24  requested prior to discovery."  Mot. (Doc. 140) at 1.
25  Generously construing that assertion as an attempt to show
26  good cause, still, plaintiff has not satisfied his burden in
27  that regard.  That unsupported contention does not come close
28  to establishing good cause within the meaning of Fed.R.Civ.P.

16(b)(4).

Moreover, in June and July 2009, when the issue of disclosing the 2006 NCCHC report was the subject of several of the parties' motions, plaintiff continually referred to the Board's alleged failure to disclose and mislead him with respect to that report, among other documents. See, e.g., Not. of Mis-Representation (Doc. 70) at 1 ("Counsel has still not forwarded or disclosed the NCCHC report that has been requested numerous times over the last 60 days."); Pl.'s Resp. to Mot. in Limine (Doc. 95) at 1 (accusing defense counsel of "hiding" document and "providing false information to the Court" regarding, among other things, the 2006 NCCHC report); Pl.'s Reply (Doc. 91) at 2-3 (claiming that defense counsel "had a duty to disclose but cho[]se to hide[,]" among other documents, the 2006 NCCHC report); and Mot. to Conduct in Camera Review (Doc. 101) at 1-2 (maintaining that defense counsel "mislead[] this Court as to the reports[,]" including the 2006 NCCHC report).  Clearly, plaintiff was not diligent in waiting more than six months after the issuance of the mandate to seek amendment on his long-held theory that defense counsel withheld the 2006 NCCHC report.

Because plaintiff Morgal has not met his burden of showing good cause under Rule 16, "the inquiry should end." See Johnson, 975 F.2d at 609.  As the Ninth Circuit permits, however, this court will also consider the "existence or degree of prejudice" to the Board, as the party opposing modification, as those factors  "might supply additional reasons to deny a motion[]" to modify under Rule 16.  Id.

1  When the court does that, it finds that allowing amendment at
2  this late date likely would require re-opening discovery
3  which, in turn, would be prejudicial to the Board, and further
4  delay the resolution of this case.   This is all the more so
5  given the Board's pending summary judgment motion filed in
6  light of the remand.   See Melbye v. Accelerated Payment
7  Technologies, Inc., 2011 WL 6754088, at *3 (S.D.Cal. Dec. 22,
8  2011) (plaintiff did not demonstrate good cause where, among
9  other things, the "parties ha[d] already engaged in, and
10 completed, discovery[;]" and defendant had "also filed a
11 summary judgment motion[]")  So, although not critical to its
12 finding that plaintiff did not act diligently in seeking leave
13 to amend, in the present case, this prejudice factor does
14 provide an additional reason for denying that motion.

15      To conclude, after engaging in an independent, *de novo*
16 review of the Magistrate Judge's denying plaintiff's motion
17 for leave to a file an amended complaint, although this court
18 reaches the same conclusion as did the Magistrate Judge  –
19 that plaintiff's motion must be denied – it does so for
20 different reasons.   As thoroughly discussed above, the basis
21 for this court's denial is plaintiff's failure to satisfy
22 Fed.R.Civ.P. 16(b)(4)'s good cause standard.

23                          ***Conclusion***

24      To the extent plaintiff is objecting to the Magistrate
25 Judge's December 8, 2011, order denying plaintiff's motion to
26 re-open discovery, such objection is untimely.   Accordingly,
27 the court overrules that objection.   Further, because
28 plaintiff Morgal has not met his burden of showing good cause

1   under Fed.R.Civ.P. 16(b)(4), this court finds that plaintiff's

2   "Motion for Leave to File a[n] Amended Complaint" was properly

3   denied, albeit for different reasons than the Magistrate

4   Judge offered.

5       Further, in light of this court's May 1, 2012, order

6   vacating the time frames set forth in the Magistrate Judge's

7   March 23, 2012, order, and "Defendant's Notice of Service of

8   Renewed Motion for Summary Judgment" (Doc. 151), the court

9   hereby **ORDERS** that:

10      (1) plaintiff shall have **thirty (30) days** from date of

11  entry of this order in which to file and serve a response

12  thereto, if any.  If plaintiff desires to file a response,

13  except for the time frames set forth therein, such response

14  otherwise shall comport with the Magistrate Judge's March 23,

15  2012, Order (Doc. 143), a copy of which is attached hereto and

16  incorporated herein; and

17      (2) within **fifteen (15) days** after service of plaintiff's

18  response, if any, the defendant may file a reply, if any.

19      DATED this 5th day of June, 2012.

_____
Robert C. Broomfield
Senior United States District Judge

28  Copies to counsel of record and plaintiff *pro se*

- 23 -